# APPENDIX

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK (WHITE PLAINS)
-----------------------------------------------------------------x
In re:

    GEORGE SASSOWER,

        Chapter 13 Debtor.

Docket No. - Chap. 13
05-Bk-23120 [ASH]
-----------------------------------------------------------------x
GEORGE SASSOWER, a Chapter 13 Debtor,

        Plaintiff,

    -against-

SAMUEL A. ALITO; NICHOLAS H. POLITAN; ROBERT ABRAMS;
ANTHONY J. SCIRICA; CHARLES L. BRIEANT; CITIBANK, N.A.
KREINDLER & RELKIN, P.C.; WILLIAM C. CONNER; FRANCIS
T. MURPHY; WILFRED FEINBERG; FELTMAN, KARESH, MAJOR
& FARBMAN; NEW YORK TIMES; NEW YORK LAW JOURNAL
and ALBERTO R. GONZALES,

        Defendants.

Adversary Proceeding
Docket No. 05-Adv-

Trial By Jury Demanded

-----------------------------------------------------------------x

    Plaintiff, a Chapter 13 debtor, as and for his complaint, in this adversarial proceeding, respectfully sets forth and alleges:

1.    The defendants, insofar as they are or were judges or officials of the United States or State of New York, are being sued in their "personal" capacities for "personal" misconduct.

2.    There is nothing in this complaint which seeks to obtain any money damages, compensatory or punitive, against the United States or State of New York, or seeks to impose the cost of any defense representation on the United States or State of New York.

A.    Any federal defense expenditures for any defense representation would have criminal consequences (31 *U.S.C.* §1350).

B.    Any NY State representation or representation at NY State cost expense, would be in violation of Amendment XI of the *Constitution of the United States* (*Hans v. Louisiana*, 134 U.S. 1 [1890]).

## AS AND FOR A FIRST CAUSE OF ACTION

3.    Plaintiff is a born American citizen, a battle-starred veteran of World War II, is entitled to all the rights, privileges and immunities provided in the Constitution and Laws of the United States, including "access to the federal courts" in order to, *inter alia*, liquidate his extensive assets, contractual and otherwise.

4A.    On February 29, 1988, *Geo. Sassower v. Abrams* (88Civ1012 [NHP]) was filed in the U.S. District Court for the District of New Jersey, which was followed on April 4, 1988 by the filing in the same court of *Geo. Sassower v. Feltman*, (88Civ1562[NHP]).

B.    There was never any question that "jurisdiction" and "venue" were appropriate.

5.    The defendants in *Geo. Sassower v. Abrams/Feltman* (*supra*), insofar as they were federal or New York State judges or officials were being sued in their "personal" capacities, for activities which, in

1

most instances, were adverse to legitimate sovereign interests, such as "diverting" federal and state monies to private coffers, as a "source" of "bribes", which diversion of monies, included those of plaintiff.

6A.     The defendants, *Samuel A. Alito, Nicholas H. Politan* and *Anthony J. Scirica*, as well as the federal defendants in *Geo. Sassower v. Abrams/Feltman (supra)*, and the defendants in this action, such as *Wilfred Feinberg, Charles L. Brieant* and *William C. Conner* all *knew* and *know* that in a money damage tort action, a United States attorney, such as Alito, can *only* defend the United States, *never* any "person", and *never* anyone, even the United States, unless a 28 *U.S.C.* §2675 "notice of claim" has been filed.

There is the irrelevant exception for revenue and custom officials, who may be sued in their own names under special circumstances and be defended by a federal attorney (28 *U.S.C.* §547[3]).

B.     Nevertheless, with actual knowledge that the expenditures he was making were *unauthorized* by Congress, triggering a "subject matter jurisdictional" infirmity, rendering all merit dispositions made to be null and void, U.S. Attorney Alito appeared for some of the defendants in *Geo. Sassower v. Abrams/Feltman (supra)* in their own names and where no 28 *U.S.C.* §2675 "notice of claim" existed.

C.     To conceal from the Article I Congress the unauthorized federal expenditures made which, according to a named federal official were "staggering" (*New Jersey Law Journal*, July 13, 1989), U.S. Attorney Alito "cooked" his federal books, as Exhibit "A", confirms.

Exhibit "A" is a response from the *United States Department of Justice* ["USDJ"] to a *Freedom of Information Act* ["FOIA"] request and states that it has no record of such litigation.

7A.     The defendants in the aforementioned action and in this action, *Robert Abrams* and *Francis T. Murphy knew* they could not be defended by a New York State attorney or at NY State cost and expense as violative of Amendment XI/Hans, triggering a "subject matter jurisdictional" infirmity and rendered all merit dispositions made to be null and void.

B.     However, after being advised by Chief Judge Brieant of New York that Judge Politan of New Jersey had been "fixed" and would not address the "subject matter jurisdictional" and other lethal infirmities, albeit mandatory, New York State Attorney General ["NYSAG"] Abrams appeared for himself and others sued in their personal capacities at unconstitutional New York State cost and expense.

8A.     Since the proceedings in the District Court of New Jersey were inundated with lethal "subject matter jurisdictional" infirmities, obviously Alito, Politan and Abrams knew *beforehand* that the Third Circuit Court of Appeals ["CCA3"] had been "fixed" and would not make a *United States v. Corrick* (298 U.S. 435, 440 [1936]) disposition, albeit mandatory.

B.         While Chief U.S. District Court Judge Brieant was the prime "fixer" on behalf of *Citibank, N.A.* at the New Jersey District Court level, it was Chief U.S. Circuit Court Judge *Wilfred Feinberg* for the Second Circuit who was the "fixer" at CCA3.

9.         By reason of the aforementioned *unauthorized* sovereign representations, the plaintiff was deprived of merit dispositions, which caused him substantial damages, for which he requests substantial monetary and punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION

10A.       The defendant, *Alberto R. Gonzales*, the Attorney General of the United States, *knows* that U.S. Attorney Alito had expended substantial federal monies, *not* authorized by Congress and, by statute, was obligated to "immediately report to the President and Congress all relevant facts and a statement of actions taken. (31 *U.S.C.* §1351) but has wilfully failed give obedience to such mandate, causing plaintiff damages.

B.         The defendant, Gonzales, also knows that all monies payable "to the federal court", which included monies paid on plaintiff's behalf, were diverted to the coffers of Citibank and *Kreindler & Relkin, P.C.* ["K&R"] and the involvement of Feinberg and Alito in such criminal adventure, and his obligation to recapture such monies in favor of the United States, but has failed to act.

## AS AND FOR A THIRD CAUSE OF ACTION

11A.       *Puccini Clothes, Ltd.*, was involuntarily dissolved at the instance of the defendants, Citibank-K&R when, in this one instance, its illegal and unethical "estate chasing" practices went awry and it immediately began to engineer the larceny of its judicial trust assets, dissipating its judicial trust assets in order to "bribe" and "corrupt".

B.         Eventually, *all* of Puccini's judicial trust assets were made the subject of larceny engineered by Citibank-K&R, almost all in order to "bribe" and "corrupt", leaving *nothing* for its nationwide legitimate creditors.

C.         The larceny of approximately $800,000 of Puccini's assets can be attributed to the actions and activities of Alito-Politan, at substantial and *unauthorized* federal cost and expense.

12A.       The initial "hard evidence" surfaced forty-two (42) months after Puccini was involuntarily dissolved when Citibank-K&R attempted to make "bribe" payments of approximately $160,000 from Puccini's judicial trust assets to the defendant, *Feltman, Karesh, Major & Farbman*, Esqs. ["FKM&F"] and $10,000 to *Rashba & Pokart* ["R&P"], and in the few months that followed the "hard evidence" reached avalanche proportions.

B.         At the time the Citibank-K&R engineered larceny surfaced, there remained in cash, approximately $800,000 in the Puccini judicial trust, resulting in an agreement reached with, *inter alia*, the

3

defendants, *Frances T. Murphy, Charles L. Brieant* and *Robert Abrams* that for the transfer to those on their behalf of Puccini's remaining cash assets as "bribes", the Citibank conspirators would be given *"Total and Complete Civil, Criminal and Disciplinary Immunity"*.

C. The *"Citibank Bribes for Immunity Agreement"* was given effect by Politan by, *inter alia*, issuing an Order of the Court which read:

> ORDERED, that the plaintiff George Sassower or anyone acting on his behalf or acting in concert or cooperation with Sassower may not file any new case, proceeding, motion or other litigation document in this Court or in the State Courts of New Jersey without specific written order of this Court ,,,"

D. When permission was requested to file a Notice of Appeal from an injunction order, Politan denied the request.

E. After being "fixed", a substantially similar injunction was issued by CCA3 by Order dated February 12, 1992, in which the defendant Scirica was a panel member (*Geo. Sassower v. Abrams/Feltman*, 37 F.3d 1506-Exhibit "B").

13. The initial "hard print" publication of the *"Citibank Bribe for Total Immunity Agreement"* appears in *Raffe v. Doe* (619 F. Supp. 891 [SDNY-1985]), a decision wherein U.S. District Court Judge *William C. Conner* was openly flaunting that he was a "fixed" and "corrupt" federal jurist.

14. At no time or place has Judge Conner or any Article III federal jurist been willing to swear under oath or affirm under penalty of perjury that *Raffe v. Doe* (*supra*) has any legal validity.

15. *Raffe v. Doe* (*supra*) is inundated with infirmities, and "on its face" has an Amendment XI/Hans "subject matter jurisdictional" infirmity, which rendered all merit dispositions to be null and void.

16. Despite the absence of "subject matter jurisdiction", Judge Conner provided the Citibank conspirators with "immunity" by enjoining any action or proceedings against the Citibank conspirators by either *Hyman Raffe*, the most major stockholder-creditor in Puccini or the plaintiff.

17. In addition to the lack of "subject matter jurisdiction", which rendered all dispositions made to be null and void, Judge Conner did not have "personal" jurisdiction over plaintiff, who was not a party in *Raffe v. Doe* (*supra*) and who, after being threatened with incarceration for six (6) years, by the Citibank entourage, Raffe discharged plaintiff, as his attorney, months *before* the decision in *Raffe v. Doe* (*supra*) was rendered.

18A. The injunctions issued by Judge Conner in *Raffe v. Doe* (*supra*) was intended to: (a) preserve the remaining cash assets in Puccini of approximately $800,000 as "bribes" and (2) provide the Citibank conspirators with "immunity".

4

However, Raffe and plaintiff had contractually based, constitutionally protected, money judgments against *Puccini Clothes, Ltd.*, *Eugene Dann* and *Robert Sorrentino* which could not be impaired by any state or federal judge, official or employee (Article I §10[1], Amendment V & XIV of the *Constitution of the United States*).

19.   Although the Conner and similar injunctions by NY Referee *Donald Diamond* and NY State Supreme Court Justice *Ira Gammerman* proved sufficient to preserve the approximately $800,000 cash in the Puccini judicial trust account, the Citibank conspirators and their stable of corrupt judges and officials could not, because of the judgment held by plaintiff, consummate the transmission of such monies as "bribes", inflicting injuries on plaintiff in their attempt.

## AS AND FOR A FOURTH CAUSE OF ACTION

20.   The Citibank conspirators, along with their stable of corrupt judges and officials, despite a "reign of judicial terror", unable to consummate the transmission of the approximate $800,000 in cash in the Puccini judicial trust account, began to "divert" monies payable "to the federal court" to the coffers of Citibank and/or K&R, to serve, after "laundering", as an additional "source" of "bribes".

21.   Eventually, aided and abetted by Alito and Politan they "diverted" all these federal monies to Citibank-K&R and the federal court and/or government received none of these federal monies.

22.   In view of the cooperation of U.S. Alito in this "diversion" of federal monies to the coffers of Citibank-K&R and his refusal to support motions to recapture these federal monies in favor of the United States, the obligation of Gonzales was to recapture such federal monies, which included monies paid on behalf of plaintiff.

## AS AND FOR A FIFTH CAUSE OF ACTION

23.   Anticipating the elevation of Brieant to be Chief Judge of the Southern District of New York ["SDNY"] on October 1, 1986, he, Murphy, Abrams and others contrived and concocted a base criminal scheme to consummate the transmission of the approximate $800,000 in the Puccini judicial trust while providing the Citibank-K&R conspirators with "immunity".

24   Pursuant to this criminal scheme, the Citibank conspirators, published in the *New York Times* and *New York Law Journal* ["NYLJ"], at Puccini's cost and expense, <u>fraudulent</u> "legal notices" which stated that *Lee Feltman, Esq.*, the court-appointed receiver for Puccini would present to his "final account" for approval by NY Referee Diamond, on October 30, 1986, who would then terminate the Puccini litigation by a judgment, and a discharge of Feltman and his surety, *Fidelity & Deposit Company of Maryland* ["F&D"].

25.   The Feltman "final accounting" for Puccini was "phantom" and "non-existent", and even if it existed, and it did not, Referee Diamond, an at-will employee with insignificant legal powers (*NY CPLR*

5

§4317[b]) did not have the authority to "approve" any "accounting" by a court-appointed receiver, terminate a judicial trust proceeding, discharge a court-appointee or his surety or execute any of the other legal papers set forth in the fraudulent "legal notices".

26. The *NY Times* and *NYLJ* were made aware, confirmed and knew *before* October 30, 1986 that the "accounting" was "phantom", and that Referee Diamond did not have the authority to execute the required legal documents, but failed and refused to repudiate or correct these fraudulent "legal notice".

27. Consequently, on the eve of the consummation of this published fraud, plaintiff filed a petition in bankruptcy, which vested plaintiff's assets in the United States District Court (28 *U.S.C.* §1334[e]) which also triggered an automatic 11 *U.S.C.* §362.

28. As a result of such filing, a cornucopia amount of evidence of judicial corruption surfaced resulting in retaliatory measures against plaintiff and causing him substantial damages, monetary and otherwise.

## AS AND FOR A SIXTH CAUSE OF ACTION

29. The obligation of the trustee in bankruptcy, *Jeffrey L. Sapir*, Esq., was to liquidate plaintiff's assets, free of any all pre-petition restrictions.

30. However, the liquidation of plaintiff's assets by Sapir, would encroach upon the approximate $800,000 remaining in the Puccini judicial trust.

31. Thus, Brieant began to "fix" U.S. Bankruptcy Judge *Howard Schwartzberg* and Sapir, so that, *inter alia*, to preserve Puccini's remaining assets as "bribes".

32. Judge Schwartzberg attempted to resist the "fixing" activities of Brieant as best as he reasonably could be expected, until December 11, 1987.

33. On December 11, 1987, "without jurisdiction", "without notice" "without due process" and *sua sponte* Brieant issued an Order that plaintiff could not make any motions in the bankruptcy proceeding "without permission".

34. When plaintiff requested permission to file a motion, Brieant without looking at the papers or inquiring as to the nature of the motion, denied permission and threatened plaintiff with incarceration, if he ever made any request for a Puccini "accounting".

35. Because of Brieant's "fixing" activities and Sapir unable to function in view of same, the bankruptcy proceeding was terminated, with leave to file in New Jersey, all to plaintiff's damage.

## AS AND FOR A SEVENTH CAUSE OF ACTION

36. Plaintiff filed his petition in bankruptcy in the District of New Jersey, which was followed by adversary proceedings, including one to satisfy plaintiff's contractually based, constitutionally protected,

6

money judgment against *Puccini Clothes, Ltd., Eugene Dann* and *Robert Sorrentino*. Consequently Brieant "fixed" the bankruptcy court, and then the District Court, to ignore the automatic "stay" provisions in 11 U.S.C. §362 in order to preserve Puccini's remaining cash assets as "bribes".

37A.     Brieant and the Citibank conspirators, then inundated those courts with *Raffe v. Doe* (*supra*) and other null and void decisions, such as those issued by Feinberg and the Murphy court, as purportedly valid, when they knew they were null and void.

B.      The fraudulent "legal notices" published in the NY Times and NYLJ, as well as other publications by NYLJ were thrust upon the New Jersey federal court, all causing plaintiff damage.

## AS AND FOR A EIGHTH CAUSE OF ACTION

39.     Brieant, Politan, Alito, Abrams and the Citibank conspirators, concocted a criminal scheme, at the cost and expense of the United States, to transfer the remaining $800,000 cash in the Puccini judicial trust account as "bribes".

40A.    Politan, as the complainant, falsely claiming plaintiff had violated his injunction, which he did not, or permit the filing of a Notice of Appeal (28 *U.S.C.* §1292) and then falsely claiming plaintiff did not "appear", although he did, in the civil actions issued a totally defective warrant.

b.      The law was clear and is clear, as stated in *Latrobe Steel v. United Steelworkers* (545 F.2d 1336, 1343 [3rd Cir. 1976]):

> "Criminal contempt ...proceedings are separate from the actions which spawned them. If a criminal contempt action develops from a civil proceeding, it bears *a separate caption apart from the civil suit*." [emphasis supplied].

c.      After plaintiff refused to surrender to a completely invalid warrant, he had Assistant U.S. Attorney *Susan Cassell* *backdate* a complaint and they spent monumental sums of federal monies, which including an *unauthorized* and *unlawful* wire tap.

d.      Politan, with the cooperation of Alito held plaintiff incarcerated for two (2) months, without bail, charged with a single count of non-summary criminal contempt.

e.      During this two (2) month period Politan, Alito, Abrams, Brieant were able to consummate the transmission of the approximate $800,000 in Puccini's assets to serve as a "source" of "bribes"

f.      As the complainant, he was disqualified to serve as the jurist in the contempt proceeding (*Young v. United States ex rel. Vuitton* (481 U.S. 787 [1987]), although he also acted as the jurist.

g.        More than fifteen (15) years later, at monumental federal cost, the proceedings are still not finalized, since Politan-Alito having caused the successful of the $800,000 in "bribes" have no further interest in this criminal proceeding.

41.       The Politan Order as it exists today, reflecting the *"Citibank Bribes for Immunity Agreement"* reads:

> "ORDERED that the plaintiff, George Sassower or anyone acting on his behalf or acting in concert or cooperation with Sassower may not file any new case, proceeding, motion or any other litigation document in this Court or in any other state and federal court in New Jersey ... [and] in the event that George Sassower or anyone acting on his behalf, shall in violation of the within Order, file without having first obtained the prior written consent of this Court, any pleading, new case, proceeding, motion or other litigation document ... then George Sassower may *immediately be held in contempt* of this Court and shall be *subject to arrest* and appropriate sanctions *without* further notice." [emphasis supplied].

WHEREFORE, plaintiff demands from the defendants, damages in the sum of one hundred million dollars, compensatory and punitive damages.

Dated:  White Plains, New York
        December 27, 2005

/s/ GEORGE SASSOWER
GEORGE SASSOWER